**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER L. MOORE, ) | |
| ) | CASE NO.  1:13-cv-00395 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jennifer L. Moore ("Moore") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

### I. Procedural History

On June 16, 2009, Moore filed applications for POD, DIB, and SSI alleging a disability onset date of May 17, 2009. (Tr. 12.) Her application was denied both initially and upon reconsideration. Moore timely requested an administrative hearing. *Id*.

On May 24, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Moore, represented by counsel, Moore's sister, and an impartial vocational expert ("VE") testified. (Tr. 12.) On September 16, 2011, the ALJ found Moore was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 27-28.) The ALJ's decision became final when the Appeals Council denied further review.

### II. Evidence

*Personal and Vocational Evidence*

Age forty-six at the time of her administrative hearing, Moore is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Moore has a high school education and past relevant work as a dietician. (Tr. 26.)

*Relevant Hearing Testimony*

At the hearing, the ALJ posed the following hypothetical questions to the VE:

> [A] young woman in her mid-40s with this work history and a high school plus education but no recently obtained vocational or college work. And the worker presents with capacity, due to her impairments, to do a range of light work with exceptions and limitations as follows. The individual can occasionally lift up to 15 pounds and could carry short distances weights up to about 40 pounds. She would need some sit/stand option. Could be on the feet standing or walking for about four hours out of eight in a day but not all at once. Assume, however, at least two hours or more at once. Sitting is essentially unrestricted, could be performing basic work activities in a sedentary position for at least six hours out of eight in a day or more. And you should know that if the worker were to work on the feet standing or walking for a total of four hours, the balance of a work day could be performed in a seated position as required. To accommodate a diabetic

> regimen she does need a relatively predictable schedule with set breaks and a lunch hour. However, she would not need to take unplanned for breaks. Moving on the worker shouldn't work at unprotected heights and would also have delays or inability with fast paced production work as opposed to basic work activities. The worker would also have difficulties with work requiring a great deal of application of higher level social interaction. Also she would have difficulties adapting to frequent and significant changes in the work setting or routine. However, she can engage without limitation in routine and perfunctory social interaction with the retail public and coworkers and can adapt to simple changes or occasional significant ones [i]f announced well in advance. Postural adjustments can be done occasionally as defined in the Dictionary of Occupational Titles. Handling and grasping and using the pinch strength with the fingers are intact but you should know that for fine finger manipulation there are limitations. Fine manipulation could be done up to no more than about two-thirds of the time in a day. The worker would also be a poor candidate to do a lot of balancing tasks while on the feet walking. Any questions?

(Tr. 109-111.)

After asking the ALJ to repeat the final limitation concerning balancing, the VE testified that such an individual would be unable to perform Moore's past relevant work, except that she could perform a reduced number of "cashier II" jobs.[1] (Tr. 111.) Furthermore, the VE identified photocopy machine operator and office helper as additional jobs the hypothetical individual could perform. (Tr. 112-13.)

The ALJ posed a second hypothetical adding limitations:

> The worker has difficulties or inability to learn at an acceptable rate new detailed and complex information. But she can learn new simple, up to three to four stepped information and apply that to work. And she'd have difficulty with analysis type tasks, analyzing reports, [etc.] – executive analysis. Would those additions cause to you to change your responses?

(Tr. 113.)

---

[1] Specifically, the VE testified that such an individual could perform only twenty-five (25%) of the cashier II positions, leaving in excess of 2,500 cashier II positions in northeast Ohio, in excess of 15,000 such jobs statewide, and in excess of 400,000 nationally. (Tr. 112.)

3

The VE testified that the above changes would have no impact on the jobs previously identified. (Tr. 113.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Moore was insured on her alleged disability onset date, May 17, 2009, and remained insured through the date of the ALJ's decision. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Moore must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Moore established medically determinable, severe impairments, due to "left knee medial meniscus tear, status post arthroscopic surgery with a partial medial menisectomy, and osteoarthritis; essential tremors and encephalopathy; hypertension; diabetes mellitus; obesity; bipolar affective disorder; posttraumatic stress disorder; and a personality disorder, not otherwise specified." (Tr. 14-15.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16-19.) Moore was found incapable of performing her past relevant work (Tr. 26), but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 19-20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Moore was not disabled. (Tr. 27.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or

5

supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on

the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. Jul.19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio Jul. 9, 2010).

## VI. Analysis

Moore claims the ALJ erred by: (1) relying on hypothetical questions less restrictive than the RFC finding; (2) utilizing vague limitations in the RFC; (3) failing to explain the weight ascribed to a treating physician's opinion as it related to the ability to manipulate objects; and, (4) employing a faulty credibility analysis. (ECF No. 15 at 1.)

### *Hypothetical Questions and the RFC*

In her first two assignments of error, Moore argues that several of the limitations included in the RFC were vague and unreviewable; and, that the hypothetical questions posed to the VE did not accurately capture the RFC. (ECF No. 15 at 5-7.)

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the

Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.946(c). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828, 2012 WL 1028105 at * 7 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Moore's brief identified the following differences between the phrasing used in the RFC and the hypothetical:

| *Phrasing in the RFC* | *Phrasing in the Hypothetical Questions* |
|---|---|
| "She would have delays or an inability to perform fast-paced production work" (Tr. 19) | "delays or inability with fast paced production work *as opposed to basic work activities*" (Tr. 110) |
| "She would have difficulties adapting to frequent *or* significant changes in the work setting or routine" (Tr. 19) | "Also she would have difficulties adapting to frequent *and* significant changes in the work setting or routine" (Tr. 110) |
| "She would have difficulty performing a lot of balancing tasks while on her feet" (Tr. 20) | "... would ... be a poor candidate to do a lot balancing tasks while on the feet *walking*" (Tr. 111) |

(ECF No. 15 at 5-6.)[3]

As this Court understands Moore's argument, because certain limitations hypothetically posed to the VE altered those in the ultimate RFC, the ALJ could not reasonably rely on the VE finding a significant number of jobs that the hypothetical individual could perform.

The Court finds that the alleged discrepancies identified by Moore are minor. The differences do not render the hypothetical questions posed inaccurate. Furthermore, Moore cites no law or regulation suggesting that the RFC must repeat verbatim the hypothetical posed. In her reply, Moore cites what appears to be an attorney's website that ostensibly contains a training manual for administrative law judges. (ECF No. 17 at 3.) Moore relies upon a provision of the manual that states: "The RFC portion of the hypothetical question posted to the vocational expert must be identical to the RFC finding in the decision." While this may constitute good practice, Moore offers no authority for the proposition that failure to heed such an admonition is grounds for remand. As such, Moore has failed to identify any legal standards that were not correctly applied.

---

[3] The italicized language represents the differences that Moore believes are material and are not emphasized in the original.

Because the VE's answers were given in response to hypothetical questions that sufficiently reflected Moore's impairments as set out in the RFC, the ALJ could justifiably rely on the VE's testimony. *See Varley*, 820 F.2d at 781; *Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987). Moore's attorney had ample opportunity to, and did, cross-examine the VE at the hearing. The ALJ observed the VE's testimony and determined that the testimony was reliable concerning the type and availability of jobs Moore could perform. Therefore, there was substantial evidence to support the ALJ's finding that Moore was able to perform a significant number of jobs in the national economy. Furthermore, Moore has not demonstrated that the ALJ failed to follow proper legal standards.

*Functional Limitations of the RFC*

In her second assignment of error, Moore asserts that several of the functional limitations contained in the RFC are "unreviewably vague," but makes no argument whatsoever as to how the identified limitations are so vague as to be unreviewable. The VE apparently had no trouble understanding the limitations as expressed. The ALJ asked the VE whether he had any question regarding the hypothetical, and the VE indicated that he did not. (Tr. 111.)

Furthermore, except for a lone citation to a prior decision of this Court that is not directly on point, Moore cites no legal authority supporting her argument. It is also not this Court's function to find law to support an "argument" only superficially raised. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citations omitted); *accord Nicholson v. City of Clarksville*, 2013 U.S.

App. LEXIS 14690 (6th Cir. Jul. 17, 2013); *Henry v. Colvin*, 2013 U.S. Dist. LEXIS 136430 (N.D. Ohio Sept. 23, 2013) ("It is counsel's obligation to fully brief the errors presented to the Court, as this Court can deem waived those issues that are raised in only a perfunctory manner.")

As such, Moore's second assignment of error is without merit.

*Consulting Examiner's Opinion*

Moore also argues that the ALJ erred by failing to incorporate the opinion of a consultative examiner, Mehdi Saghafi, M.D., with respect to Moore's difficulty manipulating objects. (ECF No. 15 at 7-8.)

In a letter dated November 13, 2009, Dr. Saghafi offered the following:

Based on the history and objective physical findings, she is able to sit 8 hours per day, and stand and walk for a total of 4 hours per day. She does not need ambulatory aid. She is able to lift and carry 10-15 pounds of weight on a frequent basis and lift and carry 16-45 pounds of weight on occasions. She is able to push and pull objects. *She has some difficulty to manipulate objects. She is able to operate hand and foot controlled devices on occasion.* She is able to drive a motor vehicle and travel. She is able to climb stairs. Speech, hearing, memory, orientation, and attention are within normal range.

(Tr. 442) (emphasis added).

The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527, 416.927. As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(d), 416.927(d).

11

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(d),(f), 416.927(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over others. *See Kornecky*, 167 Fed. App'x 496, 508 (6th Cir. 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:

12

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

The ALJ addressed Dr. Saghafi's opinion as follows:

> The consultative examiner, Dr. Saghafi, offered that the claimant [can] stand and walk a total of four hours daily, lift and carry up to fifteen pounds frequently or forty-five pounds occasionally, and could only operate hand and foot controlled devises [sic] occasionally. (10F/5; 11-09). Dr. Saghafi offered that the claimant would have some difficulty manipulating objects, but could drive a motor vehicle, travel, and climb stairs. (10F/5; 11-09). This opinion adequately addresses the claimant's continued daily activities and work. Further, this opinion is consistent with the claimant's physical treatment notes, accounting for her remote knee surgery and her essential tremor. Therefore, I afford this opinion great weight.

(Tr. 25-26.)

The ALJ plainly did not ignore the opinion of Dr. Saghafi, and he certainly explained in the decision the weight that was afforded Dr. Saghafi's opinion. Moore contends, however, that the ALJ could not have given great weight to the opinion as the RFC lacks any limitations regarding her ability to only occasionally operate hand and foot controlled devices. While Moore is correct that the ALJ did not incorporate such a limitation into the RFC, it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence. A similar argument was addressed and rejected in *Lambert-Newsome v. Astrue*, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012). Therein, a plaintiff argued that an ALJ's decision was "patently inconsistent" because it gave a consultative examiner's opinion great weight, but the RFC assessment does not mirror the consultative examiner's assessment. *Id*. The *Lambert-Newsome* court explained that "the fact that [the ALJ]

13

gave 'great weight' to Dr. Naseer's opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner..." *Id*.; *see also Straley v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 187329 (N.D. Ohio Dec. 27, 2012) (rejecting argument that because the ALJ ascribed "great weight" to a state agency physician's opinion, she was required to adopt the doctor's opinion verbatim in its entirety), *rev'd on other grounds by*, 2013 U.S. Dist. LEXIS 43424 (N.D. Ohio Mar. 27, 2013); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133 at * 11 (N.D. Ohio March 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight"); *Irvin v. Astrue*, 2012 WL 870845 at * 2-3 (C.D. Cal. March 14, 2012) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion). The ALJ giving "great weight" to Dr. Saghafi's opinion did not require him to adopt the stated limitation related to Moore's inability to operate hand and foot controlled devices more than occasionally.

Furthermore, the omission of such a limitation from the RFC is supported by substantial evidence which the ALJ expressly references in the decision. In the RFC portion of the decision, the ALJ notes that Moore reported in March of 2010 that her hands were "not shaking as bad" and that she further reported playing the keyboard and the trumpet. (Tr. 21.) The ALJ also described in great detail Moore's positive response to occupational therapy, including the occupational therapist's observations that Moore performed fine motor activities with no visible tremor; that Moore had normal coordination and dexterity; and, that Moore met all occupational therapy goals, eliminating the need for further therapy. (Tr. 21-22.) The ALJ also noted

14

Moore's claim that she was a line cook at Oberlin College in July of 2010 for four hours a day. (Tr. 24.) Consequently, the RFC as stated, without the limitation regarding the operation of hand and foot controlled devices, was supported by substantial evidence.

*Credibility Analysis*

Finally, Moore asserts that the ALJ impermissibly reasoned that her stated limitations were not credible because they were inconsistent with the RFC finding. (ECF No. 15 at 20-21.)

The ALJ concluded that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 20-21.) Moore argues that this boilerplate language was disapproved by *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). Moore's argument fails to address the numerous decisions of courts within this Circuit that have discussed *Bjornson*.

> Plaintiff's second statement of error deals with the way in which the ALJ evaluated her credibility. She argues that the administrative decision fails to "build a bridge" between the medical evidence and the ALJ's credibility finding and that the ALJ engaged in a form of "reverse engineering"– determining first that plaintiff could work, and then "looking for a credibility analysis that would support this conclusion," *see* Plaintiff's Statement of Errors, Doc. 13, at 14 – which, according to plaintiff, is an analytical method condemned by, among other decisions, *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012). The Commissioner's response to this argument does not address the *Bjornson* case, but point[s] out that the ALJ is the primary decider on issues of credibility, that the ALJ fully discussed plaintiff's testimony, and that his resolution of any credibility issues is reasonably supported by the record and consistent with Social Security Ruling 96-7p.
>
> *Bjornson*, a decision written by Judge Posner, and which took issue with the use of what he described as "a piece of opaque boilerplate" (which can also be found in the ALJ's decision in this case), rests on the premise that the language in that piece of boilerplate "implies that ability to work is determined first and is then

15

> used to determine the claimant;s credibility." *Id*. at 645. This, however, "gets things backwards," *id*., because it suggests that the ALJ first determined the claimant's ability to work without taking the credibility of his or her symptoms into account, and then rejected any testimony which would be inconsistent with the ability to work simply because the decision that the claimant can work has already been made. According to the *Bjornson* court, such an approach is inconsistent with SSR 96–7p(4). However, it appears that the ultimate decision in that case, which was to reverse and remand, was based not solely upon the use of this boilerplate or "template" language, but on the ALJ's failure to marshal adequate support for his finding that the claimant was not disabled when both the medical evidence and the claimant's own testimony strongly suggested otherwise. *Bjornson* does not appear to have been cited by any decision from the Sixth Circuit Court of Appeals. This Court has cited it once, in *Williams v. Astrue*, 2012 WL 4364147 (S.D.Ohio September 24, 2012) (Watson, J.), concluding that although the ALJ in that case used the same language, "unlike the ALJ in *Bjornson* the ALJ in Plaintiff's case goes on to explain the credibility determination in greater detail," and affirming the ALJ's credibility finding because it was "supported by substantial evidence in the record." *Williams*, *supra*, at *2-3. That approach is consistent with the way in which the Court of Appeals for the Seventh Circuit has applied *Bjornson*; for example, in *Filus v. Astrue*, 694 F.3d 863, 2012 WL 3990651, (7th Cir. September 7, 2012), that court said "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."

*Jones v. Comm'r of Soc. Sec.*, 2012 WL 5378850 at **6-7 (S.D. Ohio, Oct. 30, 2012); *Gadke v. Comm'r of Soc. Sec.*, 2013 WL 5428727 (N.D. Ohio, Sept. 26, 2013) ("Most other district courts in the Sixth Circuit that have addressed *Bjornson* have agreed that it is basically meaningless for the ALJ to simply state the boilerplate language without further analysis, but have concluded that the ALJ in their cases adequately explained the credibility determination—which determination was supported by substantial evidence in the record.") (citations omitted).

Moore's mere citation to the *Bjornson* case and assertion that the present case contains similar boilerplate language does not end the discussion.[4] Specifically, Moore does not identify

---

[4] It should also be noted that the mere use of boilerplate language has not been considered grounds for remand even in courts within the Seventh Circuit. *See, e.g., Latina v. Colvin*, 2013 U.S. Dist. LEXIS 44201 at **44-45 (E.D. Cal. Mar. 26, 2013) ("While the Seventh Circuit did

what portions of her testimony were improperly deemed not credible. Nor does Moore discuss the requirements of a proper credibility analysis under Social Security Ruling SSR 96-7p, except for a passing reference to the ruling. Finally, Moore attacks only the ALJ's *conclusion* as to her credibility and ignores the ensuing five-page analysis and discussion addressing the relevant medical evidence, Moore's daily activities, her treatment – including both medication and occupational therapy – and her response to treatment. (Tr. 21-25.)

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: December 4, 2013

---

take issue with the use of boilerplate language, in *Bjornson* the case was reversed and remanded to the SSA because of errors the ALJ made in providing a credibility analysis, not because the ALJ used boilerplate language.")